Forte
135688/2017

To whom it may concern:

We will be taking all legal action to reverse the sale of this property. We will be reporting this to the FTC, CFSB, and The Attorney General and escalating to the Appellate courts. Wrongful foreclosure occurs when a lender, mortgage servicer, trustee, or referee conducts a foreclosure sale in a manner that violates the borrower's legal rights or fails to follow the appropriate legal procedures. We believe that a foreclosure sale was wrongful, you may have legal grounds to challenge the sale in court.

We have reviewed all the necessary legal requirements and procedures leading up to the foreclosure sale. This included and involved examining issues such as proper notice to the borrower, compliance with state foreclosure laws, the accuracy of loan documentation, and adherence to any relevant federal or state consumer protection laws. We are confident the court will determine that the foreclosure sale was wrongful. This includes invalidating the sale, awarding damages to the borrower, and or take other remedial actions to address the wrongful foreclosure.

Please hold the deed transfer on the property while this is being looked into. The “purchaser” keeps coming on the property and this isn’t acceptable.

To whom it may concern,

Lauren Taliento has been helping me save my home for years. The bank sold my home without me knowing. I have filed and filed to protect my 2 children, one of them has some mental issues that are serious. We have years of documents. We never received papers that we lost the stay for this.

My son and our two dogs were thrown out of the home this am in the pouring rain by the marshal and the new buyer! Help me get the stay on while the appellate court hears our case on reversal! Please help!!!!! Please can you judge and place a temporary stay back on for a bit while we have a hearing?

Please don't leave my family homeless. Please read the clerk made a huge mistake.

Thank you.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** Richmond

Plaintiff,

v.

**Index No.** 135688/2017

**VERIFIED *PRO SE* ANSWER TO FORECLOSURE COMPLAINT**
☑ **AND COUNTERCLAIMS**
[Defendant: check this box if you checked any item in the "counterclaim" section below]

Defendant(s).

Joseph Forte

**Defendant** Joseph Forte **, *Pro Se*, answers the complaint in this proceeding as follows:**

I generally deny each allegation of the Complaint, including any allegation that Plaintiff is the owner of the note and mortgage.

**I plead the following Defenses and Counterclaims:**

## DEFENSES

☑ **Lack of Standing**: Plaintiff, upon information and belief, was not the legal owner of the note and/or mortgage, and did not otherwise have the right to enforce the mortgage, at the time it commenced this foreclosure lawsuit and therefore lacks standing.

☑ **Foreclosure Cause of Action**: Plaintiff has not pleaded that it owns the note and mortgage, which is an element of a foreclosure cause of action, and it therefore has failed to plead a foreclosure cause of action.

☑ **Statute of Limitations** (NY Civil Practice Law and Rules § 213(4)): Plaintiff may not sue on all or part of the mortgage debt because Plaintiff, upon information and belief, commenced this action more than six years after the debt became due, which defense also supports the separately pleaded counterclaim to cancel and discharge the mortgage under NY Real Property Actions and Proceedings Law § 1501(4).

☑ **Service of Process** (NY Civil Practice Law and Rules § 308): I was not properly served with process in this action for the following reason(s):____________________________________
_________________________________________________________________________
_________________________________________________________________________
_________________________________________________________________________

☐ **Prior Pending Action** (NY Real Property Actions and Proceedings Law § 1301): Plaintiff impermissibly commenced this action because there is a prior pending action to recover all or part of the mortgage debt.

☐ **No Default/Payment or Partial Paymen**t: I have paid, in whole or in part, the amounts claimed by Plaintiff, or the amounts claimed by Plaintiff are not due, or the loan is otherwise not in default.

**Reverse Mortgages**

☐ **Reverse Mortgage--Notice Requirements:** Plaintiff failed to comply with the notice requirements under New York and/or federal law or failed to comply with contractual requirements of the reverse mortgage, which are conditions precedent to this foreclosure action.

☐ **Reverse Mortgage—Failure to Specify Alleged Default**: The complaint is vague and does not specify the alleged default and/or the amount(s) plaintiff claims in this action.

☐ **Reverse Mortgage—Foreclosure on a Reverse Mortgage for Property Charge Defaults is Against Public Policy:** The purpose of reverse mortgage loans under the Home Equity Conversion Mortgage ("HECM") program is to assist senior citizens to stay in their homes, and reverse mortgage lenders have other remedies in the event of alleged failure to pay property charges. Plaintiff, accordingly, as a matter of equity and public policy, should not be permitted to foreclose.

☐ **Reverse Mortgage—NY Real Property Law § 280-b:** Plaintiff and/or its predecessor-in interest, upon information and belief, violated the requirements of NY Real Property Law § 280-b, compliance with which is a condition precedent to commencing an action to foreclose on a reverse mortgage loan covered by that statute, mandating dismissal of this foreclosure action, which defense also supports the separately pleaded counterclaim for damages under NY Real Property Law § 280-b.

**Predicate Notices/Conditions Precedent**

☑ **Notice of Default**: Plaintiff failed to comply with the requirements for the notice of default in my mortgage loan agreement, a condition precedent to this foreclosure action.

☑ **90-Day Notice Requirement** (NY Real Property Actions and Proceedings Law § 1304): Plaintiff failed to comply with the requirements of NY Real Property Actions and Proceedings Law § 1304, a condition precedent to this foreclosure action.

☑ **90-Day Notice Filing Requirement (**NY Real Property and Proceedings Law § 1306): Plaintiff failed to comply with the requirements of NY Real Property and Proceedings Law § 1306, a condition precedent to this foreclosure action.

☑ **Help for Homeowners in Foreclosure Notice Requirement** (NY Real Property Actions and Proceedings Law § 1303): Plaintiff failed to comply with the requirements of NY Real Property and Proceedings Law § 1303, a condition precedent to this foreclosure action.

## Real Estate Settlement Procedures Act

☑ **Real Estate Settlement Procedures Act Early Intervention Requirement** (12 C.F.R. § 1024.39): Upon information and belief, Plaintiff violated the early intervention requirements of the Real Estate Settlement Procedures Act because (*check one or both if applicable*):

☑ Within 36 days of my delinquency, the loan servicer did not attempt to establish live contact with me to inform me about the availability of loss mitigation options.

☑ Within 45 days of my delinquency, the loan servicer did not send me a written notice that included contact information for the servicer, a description of loss mitigation options available from the servicer, information about applying for loss mitigation, and a website listing housing counselors.

☑ **Real Estate Settlement Procedures Act Pre-Foreclosure Review Requirement** (12 C.F.R. § 1024.41): Plaintiff impermissibly filed this foreclosure during the pre-foreclosure review period because (*check one or both if applicable*):

☐ Plaintiff commenced this action before my loan was more than 120 days delinquent.

☐ I submitted a complete loss mitigation application to my loan servicer but Plaintiff commenced this action (1) before the loan servicer made a decision on that application, (2) before the time period to appeal the loan servicer's decision lapsed, or (3) before the loan servicer made a decision on an appeal I submitted in connection with the loss mitigation application.

## FHA-Insured Loans

☐ **FHA Pre-Foreclosure Requirements**: My loan is insured by the Federal Housing Administration. Upon information and belief, the loan servicer/mortgagee has not complied

with regulations of the Department of Housing and Urban Development because the loan servicer/mortgagee did not do one or more of the following (*check all that are applicable*):

☐ Send me a notice of default before the end of the second month of my delinquency (24 C.F.R. § 203.602).

☐ Attempt to arrange a face-to-face interview with me before three full monthly installments due under the mortgage were unpaid (24 C.F.R. § 203.604).

☐ Evaluate me for loss mitigation before four full monthly installments due under the mortgage were unpaid (24 C.F.R. § 203.605).

☐ Wait until three full monthly installments due under the mortgage were unpaid before commencing this foreclosure action (24 C.F.R. § 203.606).

******

☑ **Certificate of Merit Requirement** (NY Civil Practice Law and Rules § 3012-b): Upon information and belief, Plaintiff failed to comply with the Certificate of Merit requirements of NY Civil Practice Law and Rules § 3012-b.

☑ **Request for Judicial Intervention** (NY Codes, Rules and Regulations Title 22, § 202.12-a(b)): Upon information and belief, Plaintiff did not file a Request for Judicial Intervention.

☐ **Excessive Interest and Fees** (NY Civil Practice Law and Rules § 3408(f)): In a prior foreclosure action, Plaintiff failed to negotiate in good faith pursuant to CPLR 3408(f). This failure to negotiate in good faith has caused excessive interest and fees to accrue which Plaintiff, as a matter of equity and by operation of the CPLR, is not entitled to recover.

☑ **Excessive Interest** (NY Civil Practice Law and Rules § 5001(a)): Plaintiff has unreasonably

delayed filing this action, failed to file the Request for Judicial Intervention or engaged in other dilatory conduct causing excessive interest to accrue which the Court may reduce or toll, as a matter of equity and pursuant to NY Civil Practice Law and Rules § 5001(a).

☐ **Action Commenced Against a Deceased Party**: This action is a nullity because it was commenced against _____________after that party was already deceased and before a personal representative was appointed and it should therefore be dismissed.

☐ **Failure to Join Necessary Party:** This action should be dismissed because of Plaintiff's failure to join a necessary party.

☑ **Coronavirus Foreclosure Moratoriums/Forbearance and Loss Mitigation Programs:** Plaintiff failed to comply with federal or New York State law requiring forbearance and loss mitigation programs for borrowers affected or impacted by the Coronavirus pandemic, or it commenced this action in violation of federal or New York State law imposing moratoriums on the commencement of residential foreclosure actions, or otherwise in violation of any applicable Executive Order promulgated by the Governor of the State of New York or Administrative Orders promulgated by the Chief Administrative Judge of the State of New York.

**Equitable Defenses**

☐ **Unclean Hands and/or Unconscionability:** This action is barred by the doctrine of unclean hands and/or unconscionability for the following reason(s):

see attached loan audit

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

☐ **Implied Covenant of Good Faith and Fair Dealing:** Plaintiff or its predecessor-in-interest violated the covenant of good faith and fair dealing implied in all contracts and is barred from recovery in this action for the following reason(s):________________________________________

see attached loan audit

☐ **Other Defenses or Counterclaims** (*attach additional pages if needed*):

see attached loan audit

**COUNTERCLAIMS**

☐ Q**uiet Title/Cancel and Discharge the Mortgage**: The statute of limitations for commencement of this foreclosure action on the subject mortgage has expired because Plaintiff, upon information and belief, commenced this action more than six years after it accelerated the mortgage debt. Plaintiff is not in possession of the mortgaged property and I am the owner of the

property and therefore am entitled to a judgment cancelling and discharging the mortgage and adjudging the property free of any encumbrance by such mortgage pursuant to NY Real Property Actions and Proceedings Law § 1501(4).

☑ **Violations of NY Real Property Law § 280-b:** I have been injured by reason of Plaintiff's and/or its predecessor-in-interest's violations of NY Real Property Law § 280-b or the rules and regulations of the federal Department of Housing and Urban Development relating to the home equity conversion mortgage program and I am therefore entitled to recover treble and actual damages, in addition to reasonable attorneys' fees if I retain an attorney, in an amount to be proven at trial.

☐ **Attorney's Fees** (NY Real Property Law § 282): If I retain counsel, I am entitled to recover my attorney's fees in defending this action pursuant to New York Real Property Law § 282.

Wherefore, Defendant requests that the Complaint be dismissed; that judgment in favor of Defendant be granted on Defendant's counterclaims in their entirety; that Defendant be granted costs and attorneys' fees if he or she retains counsel; and that Defendant be granted any other relief allowed by law or equity as this Court shall deem just and proper.

Dated: ________________, New York
________________, 20______

__________________________________________, Defendant *Pro Se*
(Defendant's Signature)__________________________________________
(Defendant's Name)__________________________________________
(Defendant's Address)__________________________________________
(Defendant's Address)__________________________________________
(Defendant's Telephone Number)__________________________________

☑ *Prepared with the assistance of counsel admitted in New York.*

## **VERIFICATION**

I, Joseph Forte______________________________, being duly sworn, state that the within Answer is true to the best of my knowledge, except as to those matters alleged upon information and belief, which I believe to be true

Joseph Forte
(Defendant's Signature)

Sworn to and subscribed before me this
_____ day of _____________, 20_____

________________________________
Notary Public

# AFFIDAVIT OF SERVICE

I,______________________________ , served the within _________________________________ __________________________on Plaintiff's attorney as follows (*attorney's name and address*):

_________________________________________

_________________________________________

_________________________________________

_________________________________________

I served the ____________________________________________________________________
by the following method (*check all that apply)*:

- ☐ first class mail
- ☐ certified mail
- ☐ certified mail, return receipt requested
- ☐ overnight delivery service
- ☐ facsimile
- ☐ personal delivery.

on the _______ day of _________________, 20____.

I am eighteen years or older and I am not a Defendant in this lawsuit.

Signature:____________________________

Print Name:___________________________

Sworn to and subscribed before me this
_____ day of _____________, 20_____

_________________________________
Notary Public

Forte 135688/2017

**15 of the United States Code (USC)**

Title 15 of the United States Code (USC) covers various aspects of commerce and trade in the United States. It is a collection of federal laws that regulate and govern different areas related to commerce, including antitrust, consumer protection, patents, trademarks, copyrights, export controls, and more. Some key areas covered by Title 15 USC include:

1. Antitrust Laws: Title 15 USC includes laws such as the Sherman Antitrust Act, the Clayton Antitrust Act, and the Federal Trade Commission Act, which aim to prevent anti- competitive practices and promote fair competition in the marketplace.
2. Consumer Protection: Title 15 USC includes laws such as the Federal Trade Commission Act and the Consumer Product Safety Act, which protect consumers from unfair or deceptive business practices, ensure product safety, and regulate advertising and marketing practices.
3. Intellectual Property: Title 15 USC includes laws related to patents, trademarks, and copyrights, such as the Patent Act, the Lanham Act, and the Copyright Act, which provide legal protection for inventions, trademarks, and creative works.
4. Export Controls: Title 15 USC includes laws such as the Export Administration Act and the International Emergency Economic Powers Act, which regulate the export of goods and technologies that have national security implications or are subject to international control.

These are just a few examples of the areas covered by Title 15 of the USC. It is a comprehensive body of law that plays a significant role in regulating commerce and trade in the United States.

**USC law and mortgages**

What is the purpose of consumer protection laws included in Title 15 USC?

The purpose of consumer protection laws included in Title 15 of the United States Code (USC) is to safeguard the interests and rights of consumers in their interactions with businesses and to promote fair and ethical business practices. These laws are designed to ensure that consumers are treated fairly in the marketplace and are protected from deceptive, fraudulent, or unfair practices by businesses.

Consumer protection laws included in Title 15 USC serve several key purposes:

1. Preventing Deceptive Practices: These laws prohibit businesses from engaging in deceptive advertising, false labeling, misleading pricing, or other practices that may mislead or deceive consumers. The goal is to provide consumers with accurate and truthful information about products and services.
2. Ensuring Product Safety: Consumer protection laws establish regulations and standards for product safety, including testing requirements, warning labels, and recalls. This helps to ensure that products sold to consumers are safe and do not pose unreasonable risks to their health or safety.
3. Enabling Informed Choices: These laws aim to empower consumers by providing them with the information they need to make informed purchasing decisions. This includes requirements for clear and transparent disclosure of terms and conditions, warranties, and other relevant information about products and services.
4. Redressing Consumer Complaints: Consumer protection laws provide mechanisms for consumers to seek redress and resolve disputes with businesses. This may include avenues for filing complaints, pursuing legal action, or seeking refunds or compensation for damages caused by unfair or deceptive practices.

Overall, consumer protection laws in Title 15 USC play a crucial role in promoting fair competition, protecting consumers from harm, and maintaining trust and confidence in the marketplace.

**This mortgage violates the title 15 United States Code (USC), act. Please read below**

USC law, specifically Title 15 of the United States Code (USC), contains provisions that relate to mortgages and provide certain protections for consumers in the mortgage lending process. These provisions are primarily aimed at ensuring fair and transparent practices in mortgage transactions and preventing predatory lending practices. Here are some key aspects of USC law related to mortgages:

1. Truth in Lending Act (TILA): TILA, which is found in Title 15 USC, requires lenders to disclose important terms and costs associated with a mortgage loan to borrowers. This includes providing information about the annual percentage rate (APR), finance charges, payment schedule, and other loan terms. TILA also grants borrowers the right to rescind certain mortgage transactions within a specified period.
2. Real Estate Settlement Procedures Act (RESPA): RESPA, also located in Title 15 USC, aims to protect homebuyers by requiring lenders to provide borrowers with certain disclosures regarding loan terms and settlement costs. RESPA also regulates the practices of mortgage servicers and prohibits certain types of kickbacks or referral fees in real estate transactions.
3. Fair Credit Reporting Act (FCRA): While not specific to mortgages, the FCRA, which is governed by Title 15 USC, plays a role in 3. Fair Credit Reporting Act (FCRA): While not specific to mortgages, the FCRA, which is governed by Title 15 USC, plays a role in mortgage lending by requiring lenders to provide accurate and fair credit reporting to consumers. Lenders must inform borrowers if their loan application is denied based on information from a credit report and provide access to the credit report used in the decision- making process.
4. Home Ownership and Equity Protection Act (HOEPA): HOEPA, a part of TILA, is designed to protect consumers from unfair and abusive mortgage lending practices, particularly high-cost loans. It imposes additional requirements on lenders, such as mandatory counseling for borrowers, restrictions on certain loan terms, and enhanced disclosures for high-cost mortgages.

These are just a few examples of how USC law, particularly Title 15, addresses consumer protection in the context of mortgages. It is important for borrowers to be aware of these laws and their rights when entering into mortgage transactions to ensure fair treatment and avoid potential abuses in the lending process.

**Foreclosure complaint**

When a mortgage note does not have a clear owner or is considered "ownerless," it can create complexities in the foreclosure process and may impact the ability of a lender to initiate foreclosure proceedings. Here are some key points to understand:

1. Chain of ownership: Mortgage notes are typically bought and sold among financial institutions, making it important to establish a clear chain of ownership. If the note has been transferred multiple times without proper documentation, it can become difficult to determine who the current owner is.
2. MERS (Mortgage Electronic Registration System): MERS is a database that tracks changes in mortgage ownership among participating lenders. In some cases, mortgage notes may be registered with MERS, making it easier to establish ownership. However, if the note is not registered or there are issues with the registration process, it can complicate matters.
3. Legal challenges: The lack of a clear owner for a mortgage note can lead to legal challenges by borrowers facing foreclosure. They may argue that the lender does not have the legal standing to foreclose if they cannot prove ownership of the note. Courts may require lenders to provide proper documentation to establish ownership.
4. Loan modification or negotiation: In cases where the mortgage note's ownership is in question, borrowers may have an opportunity to negotiate with the lender for loan modification or other alternatives to foreclosure. The uncertainty surrounding ownership can incentivize lenders to work out a resolution to avoid potential legal complications.
5. Court intervention: In some instances, a court may step in to determine the ownership of a mortgage note and oversee the foreclosure process. This can involve appointing a receiver or creating a legal framework to resolve the ownership issue before proceeding with foreclosure.

It's important to note that the specifics of ownerless mortgage notes can vary depending on the jurisdiction and the circumstances surrounding the loan. Consulting with a foreclosure defense attorney or a real estate professional with experience in these matters is crucial to understand the legal implications and potential options available in such situations.

The plaintiff cannot prove that they are the rightful owner of the mortgage or note, and they do not have the proper documentation to support their claim. Lack of standing can be a defense that a homeowner may raise in order to challenge the foreclosure. It's important to consult with a qualified attorney for specific legal advice in foreclosure cases.

Examiner's Comments

Predatory Lending

Typically involves imposing unfair and abusive loan terms on borrowers, often through. aggressive sales tactics, taking advantage of a borrower's lack of understanding of complicated transactions, as well as outright deception.

Simply put, predatory lending becomes a crime in California when the lender manages the loan transaction to extract the maximum value for itself without regard for the borrower's ability to repay the loan.

This unfair practices can be justified in court under AB-1201 Unfair Practices Act
https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB1201&search_keywords=consumer+protection
2 Cal.4th 919 (2016) 199 Cal.Rptr.3d 66 365 P.3d 845 TSVETANA YVANOVA, Plaintiff and Appellant, v. NEW CENTURY MORTGAGE CORPORATION et al., Defendants and Respondents.
SEVERINO RIVAC, et al., Plaintiffs, v. NDEX WEST, LLC, et al., Defendants.
Case No. 13-cv-1417-PJH.
United States District Court, N.D. California.

There are many cases that have already proved some off the various violations, mentioned here.

Bank of N.Y. v. Alderazi, 99 AD3d 837, 951 NYS2d 900 NYS2d 900 (2d Dep't 2012)

Reversing order dismissing for lack of standing and denying order reference (reported at 31 Misc. 2d 1209(a) (p. 5 of outline), holding that court improperly exercised its discretion in denying order of reference and sua sponte directing dismissal of the complaint, they waived the defense of lack of standing. "Second Department further recited without analysis that "a party's lack of standing does not continue a jurisdictional defect and does not warrant a sua sponte dismissal of the complaint by the court." The chain of title is a possible fraudulent chain. Thus, the note itself backing the debt, both could possibly be considered fraud. The debt itself being transferred could be fraudulently transferred.
This creates questions as to the validity of the note and could mean the note itself could be void. Thus, any transfers of this debt(loan) to any financial institution is fraudulent, since the chain of ownership is not perfected. In the landmark case *Glaski* vs this loan and owner has lack of standing Bank of America, it was ruled in favour of the homeowner. It was ruled that the foreclosing entity must have both original note and deed of trust at the time of foreclosure.
Although the chain of title/chain of ownership possibly not perfected. Which creates argument against anyone trying to foreclose.

- Original Note must be in possession of the foreclosing entity in order to foreclose, according to the case *Glaski* vs this loan and owner has lack of standing Bank of America
- On this property, it does not appear that the financial entities have possession of the original note since an original copy has not yet been furnished. Thus, they cannot foreclose. Nor do they have any right to the property, directly or indirectly.

Thus, at this time, no financial entity or company can foreclose due to the original note argument.

Right of Recession/Right to Rescind Mortgage

Notice Of Right To Cancel TILA (Truth In Lending Act, 15 USC Section 1601 et seq; 12 CFR Part 266) allows three (3) days to review Disclosure Documents. The referenced "Three Day Right To Cancel" must have a trigger to begin. That trigger is, when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that the same are true, complete, accurate, and timely provided. Being as the entire loan/mortgage process and Mortgage Note referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment and fraudulent misrepresentation, the Borrower has other recourse, right, and cause of action under numerous State and Federal statutes.
Pursuant to the United State Supreme Court's decision in *Jesinoski v. Countrywide Home Loans*, Inc. (2015), 135 S.Ct. 790, TILA gives me, as a borrower, the right to rescind the subject loan until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under TILA. I am hereby notifying you, as the creditor, of my intention to do so as you and/or your predecessors have failed to satisfy the TILA disclosure requirements, including but not limited to delivery of a written document to me explaining my rights at the time of the transaction. To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been complied with can the "3 DAY RIGHT TO CANCEL" period begin. If the required full Disclosures have not been provided, then the period in which to CANCEL is extended for up to three (3) years, or until Lender moves to foreclose. The records thus far evidence that Borrower has requested to cancel within the three (3) year stipulated time period, while still waiting to receive all truth-in-lending disclosures as required by Federal Law, the same of which has never been received.

A close perusal, and audit of Borrower's note/loan documents have revealed certain Disclosure Violations, and that the Borrower has the remedial right and remedy pursuant to UCC 1-201 (32) (34), inter alia, to invoke their Right Of Rescission (ROR), as further evidenced by the original NOTICE of right to cancel After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s), and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to the Borrower, as well as any money/funds given to any person or fiction in law/entity in connection with said transaction. In accordance with both State and Federal law or until Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical", or "Unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered, then he/she/they may offer its "Reasonable Value". In the event that the Lender should fail or refuse to return the Borrower's money offer within twenty (20) days, the Borrower may then regain/acquire all rights to clear title and reconveyance under Federal law, State Statutes, Uniform Commercial Code, and provisions of TILA, with the same being supported by the evidence of both public and bank records, and further as attached hereto.

Additionally, the Borrower has the right to offer Lender a Reasonable Value. However, the penalties a bank can face for violations of TILA, and other State and Federal law can be as much as triple the damages, i.e., triple the amount of the interest the bank stood to fraudulently make off

the mortgage/loan transaction. Therefore, the Borrower(s) hereby in good faith makes the following offer: Borrower will forgive Bank/Lender any liability incurred by its wrongful actions, provided Bank/Lender rightfully forgive Borrower(s) the full amount of mortgage/credit the Bank/Lender fraudulently alleged to have given. In addition, Borrower(s) make the one time demand $1, 250,000.00 for any loss, damage, and injury he/she/they have sustained; and that Bank/Lender also immediately remove any/all negative comments on Borrower's credit report attributed to this transaction.

Any default, failure, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt, shall constitute this NOTICE OF RIGHT TO CANCEL as valid and fully. There are violations of predatory lending here as well.

Forte 135688/2017

# Foreclosure

**Foreclosure, in General**

Foreclosure is the procedure by which a party who has loaned money secured by a mortgage or deed of trust on real property (or has an unpaid judgment), forces the sale of the real property to recover the money due, unpaid interest, plus the costs of foreclosure, after the debtor fails to make payment.
Foreclosure Law and Legal Definition, Retrieved August 25, 2014, from
http://definitions.uslegal.com/f/foreclosure/

**Foreclosure Transaction**

The chain of title is a possible fraudulent chain. Thus, the note itself backing the debt, both could possibly be considered fraud. The debt itself being transferred could be fraudulently transferred.

This creates questions as to the validity of the note and could mean the note itself could be void. Thus, any transfer of this debt(loan) to any financial institution is fraudulent since the chain of ownership is not perfected. In the landmark case *Glaski* vs Bank of America, it was ruled in favour of the homeowner. It was ruled that the foreclosing entity must have both an original note and deed of trust at the time of foreclosure.

Although the chain of title/chain of ownership possibly not perfected. Which creates an argument against anyone trying to foreclose.

- Original Note must be in possession of the foreclosing entity in order to foreclose, according to the case *Glaski* vs Bank of America
- On this property, it does not appear that the financial entities have possession of the original note since an original copy has not yet been furnished. Thus, they cannot foreclose. Nor do they have any right to the property, directly or indirectly.

Thus, at this time, no financial entity or company can foreclose due to the original note argument.

## Affirmative Defenses

**Breach of Contract**
Definition: An accord and satisfaction is a legal contract whereby two parties agree to discharge a tort claim, contract, or other liability for an amount based on terms that differ from the original amount of the contract or claim.
Accord & satisfaction

**Accord & Satisfaction**
Requires a mortgage which is paid in full. Proof which is the assignment of mortgage. Once the mortgage is paid in full, the mortgage has to be transferred back into the original owner's name free and clear.

Technically speaking according to this provision, the mortgage loan/lien has been paid in full. When a mortgage is sold to another company, the mortgage lien has been technically satisfied. The originating lender must put the property title back into the homeowner's name.

Provision 23 in the mortgage contract document states the following:

- The highlighted wording here is “Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.
- The “payment of all sums” was received when the loan was sold according to the assignment filed below on the property with MERS involved.
- This this loan was “sold”. Paid in full. Thus, this loan has been satisfied in full.
- An accord and satisfaction has occurred on this mortgage loan with the assignment on record using the actual documents themselves are proof.

Thus, this loan should be adjusted from the property, or proper negotiations must be given to redo the terms, balance of this loan.

- The loan should be placed back into the homeowner's name and the lender should back away of any baseless claims they are making for enforcement of this loan. Since it has been paid off technically.
- Lender must release this security instrument using the verbiage of the lender's own contract on the mortgage loan contract.
- Any foreclosure proceedings against the property in question are completely fraudulent and must be halted and voided immediately.

# CASE

Weiss v Phillips 2017 NY Slip Op 08209 - November 21, 2017

**Summary:**

**Facts**: In this case before the New York Appellate Division (First Department), defendant Edward Phillips purchased two distressed properties, one of which he transferred to a relative. The two agreed the relative would obtain a mortgage on the property, which Phillips would pay and would transfer the property back to Phillips at a later date. Four years later, Phillips's attorney sent a paralegal to obtain the relative's signature on a blank deed in order to transfer the property back to Phillips. Instead, the paralegal inserted his mother's name as the grantee on the deed, and the mother later deeded the property to herself and the paralegal. On or about that same date, plaintiff Peter Weiss lent $500,000 to the paralegal and his mother in exchange for a note and mortgage on the property. At this point, the loan obtained by Phillips's relative remained unpaid, with about $450,000 due. When Phillips learned about the fraudulent transactions, he filed a lawsuit, which was settled when the paralegal and his mother agreed to transfer title on the property back to Phillips.

After settling the lawsuit, Phillips learned that the loan with Weiss was in default and that Weiss intended to foreclose on the property. Phillips thus executed a Consolidated Extension Mortgage Agreement Note (CEMA) with Weiss through which Phillips acknowledged the validity of Weiss's loan and mortgage on the property and agreed to waive all defenses and counterclaims in exchange for a one-year extension of the loan. After the year passed, Weiss commenced this action and filed a motion for summary judgment seeking to foreclose. The trial court granted Weiss's motion over Phillips's objections, including that the mortgage was unenforceable because it was based on a void deed.

**Holding**: On appeal, the New York Appellate Division (First Department) affirmed the trial court's decision in an opinion authored by Justice Renwick. Among other things, the court held that the deed here was the result of a fraudulent inducement and not a forgery, which made it only voidable rather than void.
Further, contrary to Phillips's arguments, the court held that Weiss was a bona fide encumbrancer due to the CEMA's provision that Phillips acknowledged and ratified Weiss's rights under the loan documents and waived any claims or defenses regarding the same. Additionally, the court rejected Phillips's claim that the CEMA was unconscionable and that he did not understand its terms. Phillips executed it with the advice of counsel, in part because of counsel's advice that Weiss might have an equitable subrogation claim because purportedly $450,000 of the $500,000 in loan proceeds from his loan were used to discharge Phillips's relative's mortgage on the property. The court further found that this was not a typical foreclosure mandating the production of the promissory note tied to the mortgage before the foreclosure could proceed. This was so because Phillips acknowledged Weiss's right to foreclose in the CEMA and there was no question that Weiss was the holder of the note and mortgage as evidenced by the CEMA and the parties' deposition testimony. As such, the court held that summary judgment was appropriate.

Justice Gesmer authored a lengthy concurrence in part and dissent in part. The focus on the dissent was the argument that UCC 3-804 required Weiss to produce the original Note to foreclose or explain how it was lost or destroyed. The dissent also found that the CEMA was ambiguous on whether Phillips was assuming responsibility to pay the mortgage and questioned whether Weiss was a bona fide encumbrancer as he did no investigation into the fraudsters' creditworthiness or the bona fides of the property.

**Relevance to the title industry**: This decision is a reminder of the importance of having a party acknowledge the validity of title or a lien in documents resolving title disputes whether those documents take the form of a settlement agreement, a modification or an extension of a mortgage. Weiss unknowingly made a $500,000 loan secured by a mortgage on a property that the borrowers obtained via fraud. Through the CEMA, however, Weiss ensured that the mortgage was enforceable against the property by his having the property's "true" owner be a party to the CEMA and acknowledge the mortgage lien. Additionally, the decision reemphasizes the importance of the doctrine of equitable subrogation to lenders or title insurance companies which, according to Phillips's attorney, was part of the reason Phillips agreed to execute the CEMA and ratify the mortgage.

https://law.justia.com/cases/new-york/appellate-division-first-department/2017/810090-10-3935.html

FRAUD CASES

**US Bank N.A. v Nelson - January 24, 2019 Summary**

The question in this case is whether a foreclosure defendant preserves the defense of lack of standing if the answer denies the plaintiff's allegation of standing but does not separately plead lack of standing as an affirmative defense.

The facts are straightforward. Defendants defaulted on a loan secured by a mortgage, and US Bank commenced this action to foreclose on the loan. The complaint alleged that US Bank was "the owner and holder" of the mortgage being foreclosed. Defendants' answers denied information sufficient to confirm the truth of that allegation but did not separately allege that plaintiff lacked standing to commence the action. Supreme Court granted US Bank's motion for a judgment of foreclosure and denied defendants' motion to dismiss for, among other reasons, lack of standing.

A divided panel of the Second Department affirmed. The majority noted that, as a general matter, a defendant is not required to affirmatively plead in its answer that the plaintiff failed to allege some essential element of a claim; it is enough to simply deny the plaintiff's allegations. But a defendant is required to affirmatively plead any matter that is not the plaintiff's burden to prove as part of the claim. And standing is not an essential element of a foreclosure claim; the issue arises only if defendant raises it. So, the majority held, a defendant could forfeit the defense of lack of standing by failing to affirmatively plead it in the answer or raise the defense in a pre-answer motion to dismiss. And while the majority stressed that no "magic words" or "ritualistic formulation" was required, a "mere denial of factual allegations will not suffice."

A single judge dissented. The dissenter concluded that a denial of the plaintiff's factual allegations of standing would put a plaintiff on notice that standing would be in issue. And given the notice function of pleading, such a denial should be sufficient to plead the defense of lack of standing, regardless whether it is expressly labeled a "defense" or an "affirmative defense."

**U.S. BANK NATIONAL ASSOCIATION v. SILVANA SOTILLO - June 5, 2017**

xxxxx "We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). Thus, we are "limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). We are required to "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' Xxxxxxxxxxxxxxxxxxx that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgement or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995) xxxxxxxxxxxxxxx We have held "an assignee of a [contract] can be held liable under the CFA, for its own unconscionable commercial activities in the subsequent performance of the assigned contract." Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 533 (App. Div. 2008). We made clear "[o]ur holding is limited to an assignee's own unconscionable commercial practices . . . , not an assignee's derivative liability for the actions of the assignor of the [contract]." Id. at 538.4 Xxxxx a transfer of the negotiable instrument to a holder in due course to whom the mortgage is also assigned will enable the assignee to enforce the mortgage (as well as the negotiable instrument) according to its terms, free and clear of any personal defenses the mortgage

or may have against the assignor. This results from the view that the mortgage is mere "incident" or "accessory" to the debt and when the debt is embodied in a negotiable instrument the quality of negotiability is necessarily imparted to the accompanying mortgage.

N.J.S.A. 12A:3-305(a) in turn provides such an obligor may assert real defenses, namely

(1) a defense of the obligor based on infancy of the obligor to the extent it is a defense to a simple contract, duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or discharge of the obligor in insolvency proceedings[,]

(2) a defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; [or]

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument[.]

1. VIOLATIONS OF TILA

JERRY HOANG VS BANK OF AMERICA - December 6, 2018
SUMMARY

Truth in Lending Act

The panel reversed the district court's dismissal of an action brought by a borrower against Bank of America, N.A., alleging claims under the Truth in Lending Act ("TILA") after the bank declared the borrower in default on a loan and initiated non-judicial foreclosure proceedings. If a creditor fails to make required disclosures under TILA, borrowers are allowed three years from the loan's consummation date to rescind certain loans. 15 U.S.C. § 1635(f). The borrower sent the bank notice of intent to rescind the loan within three years of the consummation date. The panel held that under *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790, 792 (2015), borrowers may affect rescission of such a loan simply by notifying the creditor of their intent to rescind within the three-year period from the loan's consummation date. The panel further held that because TILA did not include a statute of limitations outlining when an action to enforce such a rescission must be brought, courts must borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. The panel held that in Washington, the state's six-year contract statute of limitations was the most analogous statute. The panel rejected the district court's application of TILA's one-year statute of limitations for legal damages claims. The panel also rejected ****** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

HOANG V. BANK OF AMERICA 3

The bank's argument that Washington's two-year catch-all statute of limitations should apply. Because the borrower brought this action within six years, the district court erred in dismissing the TILA claim as time barred. The panel held that the district court improperly denied the borrower leave to amend the complaint. The district court made its determination based on its determination that amendment would be futile because the claims were time-barred. The panel held that because the borrower's TILA rescission enforcement claim was not time-barred, an amendment by the borrower would not be futile.

OPINION
N.R. SMITH, Circuit Judge:

If a creditor fails to make required disclosures under the Truth in Lending Act (TILA), borrowers are allowed three years from the loan's consummation date to rescind certain loans.**1** 15 U.S.C. § 1635(f). Borrowers may effect that rescission simply by notifying the creditor of their intent to rescind within the three-year period. *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790, 792 (2015). TILA does not include a statute of limitations outlining when an action to enforce such a rescission must be brought. Without a statute of limitations in TILA, courts must first borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. *Cty. of Oneida v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 240 (1985). In Washington, the state's six-year contract statute of limitations is the most analogous statute. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

1. LACK OF JURISDICTION

**U.S. BANK NATIONAL ASSOCIATION v. MERVIN HODGE - October 18, 2018**

"Service by mail is not effective . . . unless plaintiff first made 'a reasonable and good faith attempt' to serve defendant personally." City of Passaic v. Shennett, 390 N.J. Super 475, 483 (App. Div. 2007) 3(a)). "A party's good faith effort to personally serve a defendant must be 'described with specificity in the proof of service.'" Ibid. (quoting R. 4:4-3).

The Chapter 7 discharge of debt did not impact plaintiff's mortgage lien.
The Order of Discharge specifically notes "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."

**SHAROVA V WELLS FARGO BANK, N.A. - January 3, 2019**

Xxx "with respect to an action pursuant to RPAPL 1501(4), a person having an estate or an interest in real property subject to a mortgage can seek to cancel and discharge that encumbrance where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose the mortgage has expired, provided that the mortgagee or its successor was not in possession of the subject real property at the time the action to cancel and discharge the mortgage was commenced…………………………………… xxxxxxxxxxxx

**King v. Wells Fargo Bank, N.A.**

xxxxxxxxxxxx entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court.". The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. ........xxxxx In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there.

**Arguments against Foreclosure**

Considering all of the fraud involved with securitization & mortgages, these important points/consideration must be considered.

- Original Note has been lost or destroyed
- Note and Deed of Trust have been separated
- Possible MERS fraud involved with this loan
- The right party to foreclosure must have original note, as well as deed of trust to foreclosure, in this case no one entity does. Thus, foreclosing on this property is completely fraudulent.

According to the landmark case, *Glaski* Vs. Bank of America. The case was determined that in order for a company/financial entity to foreclose on a property, the company/financial entity must have both the mortgage note and the deed of trust together at the time of foreclosure. On this specific loan this is not the case, and the foreclosing entity does not have both the original mortgage note, nor the deed of trust. Hence the conclusion is that they cannot foreclose.

**Law Analysis/Citation**

The trial court has confirmed it. Now the appellee's brief confirms it. There is no legal precedent for this case to be on the Judicial Branch website. None has been cited, appellant has found no such precedent in Connecticut or for that matter in the United States. And this Court agrees…15 months ago. JP Morgan Chase Bank, N.A. vs. Virgulak, 192 Conn.App. 688 (2019). And if appellant is mistaken, he is in great company, because neither the trial court nor the plaintiff, nor the Appellate Court has been able to cite a case --- a holding. This Court agrees with appellant and with a holding: The plaintiff has cited no authority, and we have found none, that stands for the proposition that…a court can foreclose a mortgage that purports to secure a nonexistent debt. Id., supra at 705. Case Citation JP Morgan Chase Bank vs Dirgulak. Case Citation: 218A.3d

**Chain of Title:**

The chain of title is a possible fraudulent chain. Thus, the note itself backing the debt, both could be considered fraud. The debt itself being transferred could be fraudulently transferred.

This creates questions as to the validity of the note and could mean the note itself could be void. Thus any transfers of this debt(loan) to any financial institution is fraudulent, since the chain of ownership is not perfected. In the landmark case *Glaski* vs Bank of America, it was ruled in favour of the homeowner. It was ruled that the foreclosing entity must have both an original note and deed of trust at the time of foreclosure.

Although the chain of title/chain of ownership is possibly not perfected. Which creates an argument against anyone trying to foreclose.

- Original Note must be in possession of the foreclosing entity in order to foreclose, according to the case *Glaski* vs Bank of America
- on this property, it does not appear that the financial entities have possession of the original note, thus they cannot foreclose. Nor do they have any right to the property, directly or indirectly.
- Thus, at this time, no financial entity or company can foreclose due to the original note argument.

**MERS & The Debt**

MERS does record the assignment in the actual real property records system. The actual note itself, is the creation of the legal obligation to have the loan/note repaid for the debt. Thus the note is the actual legal document which backs the debt. The debt itself has not been transferred or negotiated by MERS

- MERS does record the assignment in the actual real property records system. The actual note itself, is the creation of the legal obligation to have the loan/note repaid for the debt. Thus the note is the actual legal document which backs the debt. The debt itself has not been transferred or negotiated by MERS

- MERS is not legally entitled to receive monthly payments from the borrower. MERS cannot legally be entitled to benefit from a foreclosure in any sale of the home in a foreclosure sale.

- MERS does not own the mortgage note, thus it cannot attempt to foreclose.

- MERS cannot have any legal claim or interest in the loan interest, the debt, security instrument which MERS serves as a nominee.

- Regarding MERS policy and legalities, only a MERS member can transfer to another MERS member. A non MERS member cannot conduct transfers for a MERS member and vice versa.

**Note: MERS section included here to give a background information to mers as it relates to "other" mortgages which mers has been involved in.**

- The chain of title is a possible fraudulent chain. Thus, the note itself backing the debt, both could possibly be considered fraud. The debt itself being transferred could be fraudulently transferred.

- This creates questions as to the validity of the note and could mean the note itself could be void. Thus, any transfers of this debt(loan) to any financial institution is fraudulent since the chain of ownership is not perfected. In the landmark case *Glaski* vs Bank of America, it was ruled in favour of the homeowner. It was ruled that the foreclosing entity must have both original note and deed of trust at the time of foreclosure.

Although the chain of title/chain of ownership possibly not perfected. Which creates an argument against anyone trying to foreclose.

- Original Note must be in possession of the foreclosing entity in order to foreclose, according to the case *Glaski* vs Bank of America
- On this property, it does not appear that the financial entities have possession of the original note since an original copy has not yet been furnished. Thus they cannot foreclose. Nor do they have any right to the property, directly or indirectly.
- Thus, at this time, no financial entity or company can foreclose due to the original note argument.

CASES

**CAPITAL ONE, N.A v. LAURENCE FRANKLIN -** November 4, 2019

**Summary:**

If Held Separately, Note and Mortgage Assignment Both Needed to Foreclose, Court Says
A New Jersey appeals court has held in a published ruling that a party seeking to foreclose on a mortgage must have both the promissory note and a valid assignment of mortgage.

A New Jersey appeals court has held in a published ruling that a party seeking to foreclose on a mortgage must have both the promissory note and a valid assignment of mortgage. But in a case where Capital One Bank brought a foreclosure action on a property when it possessed the mortgage but not the note, the appeals court said irregularities did not warrant reversal. James Peck IV appealed the Aug. 26, 2016, judgment of foreclosure by Capital One, which was the loan servicer for Freddie Mac. Peck, an attorney who litigated the case pro se, maintained that only Freddie Mac had standing to foreclose. Peck represented himself until his death in July 2016, when counsel was retained. According to the Appellate Division's opinion Monday, Peck took out a $258,750 mortgage with Chevy Chase Bank in March 2005, and a few months later the bank sold the note to Freddie Mac but retained the mortgage.

In 2009, Chevy Chase merged with Capital One, and in 2010 Peck defaulted on the mortgage. A first attempt by Capital One to foreclose on Peck's property was dismissed without prejudice in June 2012 because the bank failed to comply with a court-ordered deposition of an employee who could shed light on possible mortgage irregularities, the court said. In those proceedings, Capital One brought the original note to court, but it was returned to Freddie Mac later that year. In February 2013, Capital One started the present foreclosure proceedings. Peck contested the action, but a judge dismissed his answer and referred the case to the Office of Foreclosure for entry of final judgment as uncontested. Peck's motion for reconsideration was denied in May 2016, and his motion for summary judgment—which he apparently filed shortly before his death— was denied in November 2016, according to the Appellate Division. On appeal before Judges Jose Fuentes, Ellen Koblitz and Thomas Manahan, Peck's estate, represented by Nicholas Stratton of Stratton Stepp in Glen Rock, asserted that Freddie Mac, as owner of the loan, is "the only entity with the right to enforce the mortgage."

The Appellate Division panel said that, when the note is separated from the mortgage, "the plaintiff in a foreclosure action must demonstrate both possession of the note and a valid mortgage assignment prior to filing the complaint." Such a policy precludes "the possibility of one entity foreclosing on the home while the other enforces the note," Koblitz said, writing for the panel. Peck's estate conceded that Freddie Mac, as owner of the note, had the right to foreclose on the home. The estate argued, however, that the mortgage was not legally retained by Chevy Chase Bank but followed the note by force of law. "We reject that analysis. The issue is whether Capital One, both the successor owner and assignee of the mortgage, and the loan servicer, had the right to foreclose," Koblitz wrote. She cited a 2013 Freddie Mac internal bulletin, which said, "Foreclosures must normally be processed or litigated in the [s]ervicer's name." Since the defendant was provided more than sufficient notice that Capital One was the servicer for Freddie Mac, and since Freddie Mac publicly declared its policy to foreclose through its servicers, and since Capital One did possess the note at an earlier foreclosure proceeding as well as an assignment, the court said the irregularities were not sufficient to reverse the foreclosure judgment. "We do not intend by this decision to approve the way this foreclosure was prosecuted. The note should have been in Capital One's possession at the time it filed this foreclosure complaint," Koblitz wrote for the court. Stratton said he was considering an appeal to the Supreme Court. Calling the ruling "frustrating," "hard to square with other cases" and "super confusing," he said the ruling holds that, "by operation of law, the mortgage does not follow the note. Previously, if you own the note, the mortgage follows the note." Stratton, who represents homeowners in foreclosure cases, expressed concern about the precedential nature of the ruling. "It's a published case—you're going to see this case pop up in foreclosure matters," he said. "I'm not sure anyone knows how this is going to play out." The lawyer for Capital One, Danielle Weslock of McCarter & English in Newark, did not return a call about the case.

**Investors Bank, Plaintiff-Respondent, v. Javier Torres, Defendant-Appellant, and Mrs. Javier Torres, his wife, and Dora M. Dillman, Defendants. - 07-01-2020**

xxx... the courts ensure that the defendant will be adequately protected against a claim to the instrument by a holder that may appear at some later time xxxxxxxx..... N.J.S.A. 12A:3-309 plainly bars a party that possessed a lost promissory note before it was lost from transferring its interests under that note after the loss. xxxx

a. A person not in possession of an instrument is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, the loss of possession was not the result of a transfer by the person or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

**Kolbasyuk v. Capital Management Services, LP, No. 18-1260 (2d Cir. 2019) – March 12, 2019**

**SUMMARY**

A debt collection letter that informs the consumer of the total, present quantity of his or her debt satisfies 15 U.S.C. 1692g notwithstanding its failure to inform the consumer of the debt's constituent components or the precise rates by which it might later increase. Such a letter does not violate section 1692e for failure to inform the consumer that his or her balance might increase due to interest or fees when the letter contains the "safe harbor" language previously ratified in Avila v. Riexinger & Associates, LLC, 817 F.3d 72 (2d Cir. 2016).

In this case, after plaintiff received a debt collection letter from CMS, he filed suit against the company under the Fair Debt Collection Practices Act. The Second Circuit affirmed the district court's dismissal of plaintiff's claims, holding that CMS's letter complied with sections 1692g and 1692e.

**Debt Validity Argument + Additional Arguments**

Debt Collection Validity

- If a debt cannot be validated, there can be no collection of it. This is established by 15 USC 1692g(b).
- Disputed Debts a debt collector must cease collection of the debt until it is validated.

18 U.S. Code § 241 - Conspiracy against rights Additional Argument:
"Where there are no depositions, admissions, or affidavits the court has no facts to rely on for a summary determination."

**Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.**

The National Bank Act of 1864, Section 28, "Such associations shall not purchase or hold real estate in any other case or for any other purpose than as specified in this section. Nor shall it hold possession of any real estate under mortgage, or hold the title and possession of any real estate purchased to secure any debts due to it for a longer period than five years."

**Law Analysis/Citation:**
The trial court has confirmed it. Now the appellee's brief confirms it. There is no legal precedent for this case to be on the Judicial Branch website. None has been cited, appellant has found no such precedent in Connecticut or for that matter in the United States. And this Court agrees…15 months ago. JP Morgan Chase Bank, N.A. vs. Virgulak, 192 Conn.App. 688 (2019). And if appellant is mistaken, he is in great company, because neither the trial court nor the plaintiff, nor the Appellate Court has been able to cite a case --- a holding.

**This Court agrees with appellant and with a holding:**
The plaintiff has cited no authority, and we have found none, that stands for the proposition that…a court can foreclose a mortgage that purports to secure a nonexistent debt. Id., supra at 705.
Case Citation
JP Morgan Chase Bank vs Dirgulak. Case Citation: 218A.3d

**CASE**

***Boucher v. Fin. Sys. of Green Bay, 880 F.3d 362***

In Boucher v. Fin. Sys. of Green Bay, a debt collector sent a Wisconsin borrower a notice that closely tracked safe harbor language that 7th Circuit had previously ruled to comply with the FDCPA—except for one thing. The debt collector's notice indicated that the Wisconsin borrower may be liable for "late charges and other charges." The borrower sued the debt collector under the FDCPA asserting that the "late charges and other charges" language in the notice violated the statute. The debt collector countered that its notice tracked the safer harbor language and the notice could not violate the FDCPA as a matter of law.

Basing its decision in part on Wisconsin law, the 7th Circuit found the debt collector's notice was misleading to an unsophisticated consumer particularly given that Wisconsin law does not allow a debt collector to recover late charges and other charges. Accordingly, the 7th Circuit agreed with the borrower that the notice was confusing to the unsophisticated consumer.

In addition to limiting the value of "safe harbor" language, the 7th Circuit cautioned lower courts against dismissing FDCPA claims based upon deceptive notices. That is because the 7th Circuit suggests that "district court judges are not good proxies for the 'unsophisticated consumer' whose interest the [FDCPA] protects."

https://caselaw.findlaw.com/us-7th-circuit/1886136.html Saccameno v. U.S. Bank National
Around 2009, Saccameno defaulted on her mortgage. U.S. Bank began foreclosure proceedings. She began a Chapter 13 bankruptcy plan under which she was to cure her default over 42 months while maintaining her monthly mortgage payments, 11 U.S.C. 1322(b)(5). In 2011, Ocwen acquired her previous servicer. Ocwen, inexplicably, informed her that she owed $16,000 immediately. Saccameno continued making payments based on her plan. Her statements continued to fluctuate. In 2013, the bankruptcy court issued a notice that Saccameno had completed her payments. Ocwen never responded; the court entered a discharge order. Within days an Ocwen employee mistakenly treated the discharge as a dismissal and reactivated the foreclosure. For about two years, Saccameno and her attorney faxed her documents many times and spoke to many Ocwen employees. The foreclosure protocol remained open. Ocewen eventually began rejecting her payments. Saccameno sued, citing breach of contract; the Fair Debt Collection Practices Act; the Real Estate Settlement Procedures Act; and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBPA), citing consent decrees that Ocwen previously had entered with regulatory bodies, concerning inadequate recordkeeping, misapplication of payments, and poor customer service. The jury awarded $500,000 for the breach of contract, FDCPA, and RESPA claims, plus, under ICFDBPA, $12,000 in economic, $70,000 in non-economic, and $3,000,000 in punitive damages. The Seventh Circuit remanded. While the jury was within its rights to punish Ocwen, the amount of the award is excessive.

https://law.justia.com/cases/federal/appellate-courts/ca7/19-1569/19-1569-2019-11-27.html

***1: McCollough, supra, 637 F.3d 939***, which held that a debt collector had violated the FDCPA by serving "requests for admission" upon a pro se defendant that: (1) "asked the [debtor] to admit facts that [the debt collector knew] were not true"; and (2) did not include an explanation that, under Montana law , the requests would be deemed admitted if not responded to within 30 days. The Ninth Circuit concluded that "the service of requests for admission containing false information upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes 'unfair or unconscionable' or 'false, deceptive, or misleading' means to collect a debt." (Id. at p. 952.) In reaching its holding, the court rejected the debt collector's assertion that improper discovery techniques should be remedied through "[state] court rules for civil procedure" rather than through "liability under the FDCPA." (Id. at p. 951.) The court explained that Congress had "enacted the FDCPA expressly because prior laws for redressing 'abusive, deceptive, and unfair debt collection practices' were 'inadequate to protect consumers.' [Citation.] The statute preempts state laws 'to the extent that those laws are inconsistent with any provision of [the FDCPA].' [Citation.]" (Ibid.)

To demonstrate a violation of the FDCPA, the moving party must show (among other things) that: (1) the defendant is a "debt collector" within the meaning of the statute; and (2) the defendant committed some act or omission in violation of the FDCPA. (See Robinson v. Managed Accounts Receivables Corp. (C.D. Cal. 2009) 654 F.Supp.2d 1051, 1057.) Bretches v. OneWest Bank, B257013, at *13-14 (Cal. Ct. App. Sep. 14, 2015)

***15 U.S. Code § 1692g - Validation of debts***
**U.S. Code**

(a) Notice of debt; content within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer’s written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) **Admission of liability** The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) **Legal pleadings** A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) **Notice provisions** The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

(Pub. L. 90–321, title VIII, § 809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006.)

***Fair debt collections act usc 1692***

**§ 805. Communication in connection with debt collection**

**(a) Communication with the consumer generally**

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

**(b) Communication with third parties**

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**(c) Ceasing communication**

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except –

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

**(d) "Consumer" defined**

For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator. 15 USC 1692d

**§ 807. False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of –
  (A) the character, amount, or legal status of any debt; or
  (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
(4) (The representation or implication that nonpayment of any debt will result in the arrest or imprisonment
(5) of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person
(6) unless such action is lawful and the debt collector or creditor intends to take such action.
(7) The threat to take any action that cannot legally be taken or that is not intended to be taken.
(8) The false representation or implication that a sale, referral, or other transfer of any interest in a debt
(9) shall cause the consumer to –
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.
(13) The false representation or implication that documents are legal process.
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.
(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.
(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title. 15 USC 1692f

**§ 809. Validation of debts**

**(a) Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**(c) Admission of liability**

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings**

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions**

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section. 15 USC 1692h

Source: https://www.ftc.gov/legal-library/browse/rules/fair-debt-collection-practices-act-text

**Right of Rescission Laws & Case Laws**
**Mortgage Rescission**
**Right of Rescission /Right to Cancel Mortgage Argument**

The notice of right to cancel disclosure was not provided to this client/homeowner. Thus the recent supreme court ruling on this sensitive matter gives the client/homeowner grounds to ask for cancellation of the mortgage/loan. It would be wise for the foreclosing bank or lender the client/homeowner is interacting with to give the client/homeowner favorable terms or to negotiated with the client/homeowner in order to avoid the legal proceedings that might follow considering the severity of these violations by the bank/lender/foreclosing entity.

Notice Of Right To Cancel TILA (Truth In Lending Act, 15 USC Section 1601 et seq; 12 CFR Part 266) allows three (3) days to review Disclosure Documents. The referenced "Three Day Right To Cancel" must have a trigger to begin. That trigger is, when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that the same are true, complete, accurate, and timely provided. Being as the entire loan/mortgage process and Mortgage Note referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment and fraudulent misrepresentation, the Borrower has other recourse, right, and cause of action under numerous State and Federal statutes.

Pursuant to the United State Supreme Court's decision in Jesinoski v. Countrywide Home Loans, Inc. (2015), 135 S.Ct. 790, TILA gives me, as a borrower, the right to rescind the subject loan until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under TILA. I am hereby notifying you, as the creditor, of my intention to do so as you and/or your predecessors have failed to satisfy the TILA disclosure requirements, including but not limited to delivery of a written document to me explaining my rights at the time of the transaction.

To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been complied with can the "3 DAY RIGHT TO CANCEL" period begin. If the required full Disclosures have not been provided, then the period in which to CANCEL is extended for up to three (3) years, or until Lender moves to foreclose. The records thus far evidence that Borrower has requested to cancel within the three (3) year stipulated time period, while still waiting to receive all truth-in-lending disclosures as required by Federal Law, the same of which has never been received.

A close perusal, and audit of Borrower's note/loan documents have revealed certain Disclosure Violations, and that the Borrower has the remedial right and remedy pursuant to UCC 1-201 (32) (34), inter alia, to invoke their Right Of Rescission (ROR), as further evidenced by the original NOTICE OF RIGHT TO CANCEL. This letter shall constitute NOTICE to all Lender(s), Successor(s), and Beneficiaries assigned, and/or appointed.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s), and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to the Borrower, as well as any money/funds given to any person or fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical", or "Unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered, then he/she/they may offer its "Reasonable Value".

In the event that the Lender should fail, or refuse to return the Borrower's money offer within twenty (20) days, the Borrower may then regain/acquire all rights to clear title and reconveyance under Federal law, State Statutes, Uniform Commercial Code, and provisions of TILA, with the same being supported by the evidence of both public and bank records, and further as attached hereto.

Additionally, Borrower has the right to offer Lender a Reasonable Value. However, the penalties a bank can face for violations of TILA, and other State and Federal law can be as much as triple the damages, i.e., triple the amount of the interest the bank stood to fraudulently make off the mortgage/loan transaction. Therefore, the Borrower(s) hereby in good faith makes the following offer: Borrower will forgive bank/trust any liability incurred by its wrongful actions, provided bank/trust rightfully forgive Borrower(s) the full amount of mortgage/credit bank/trust fraudulently alleged to have given. In addition, Borrower(s) make the one-time demand $1, 250,000.00 for any loss, damage, and injury he/she/they have sustained; and that bank/trust also immediately remove any/all negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt, shall constitute this NOTICE OF RIGHT TO CANCEL as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

## FORECLOSURE OFFENSE AND DEFENSE SEPARATION OF MORTGAGE NOTE

It might seem like a strange idea, but it has been in the Uniform Commercial Code for Years and its predecessor. The usual rule is that the mortgage follows the note, and the note follows the mortgage. But the UCC provides an exception for the operation of the parties intent, and by operation of law by inference. Start with this Statute from Florida which has its counterpart in most of the country: 701.02 Assignment not effectual against creditors unless recorded and indicated in title of document. –

(1) No assignment of a mortgage upon real property or of any interest therein, shall be good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document which, in its title, indicates an assignment of mortgage and is recorded according to law. So what you say? Well in most cases the note was assigned, and the mortgage wasn't. At least it wasn't recorded. And in most cases as the loan moves up the securitization chain several things happens. Instead of there being a specific assignment of a specific loan, note or mortgage, there is a general description of the pool and possibly some identification of the loan date or parties but not assignment, endorsement, allonge or actual transfer. So the first thing that happens in securitization of the loan is that the named payee on the note gets (a) paid in full and (b) paid a fee for the "rental" of its charter or license in order to facilitate an unchartered, unregistered entity or person to enter into a transaction that LOOKS like a residential loan transaction but is actually a scheme to issue unregulated securities to unsuspecting (or suspecting) investors under false pretenses.

So if the loan is for $100,000, the payee on the note gets the full $100,000. Plus, he usually gets $2500 "under the table" (TILA violation).

The point here is that the note is paid and without a RECORDED assignment, the mortgage does NOT travel with the note even if an assignment was intended. And the reason is the same as the reason for recording a deed. Without that requirement a person could issue warranty deeds to 100 people on the same property. In fact, as was done in many cases with the movement of these loans, it would be the equivalent of selling the deed to the same property 100 times by a grantor who has no title.

The reason this is so important, is that if the mortgage has been severed from the note, then the obligation, if it exists at all has been converted from a secured obligation to an unsecured obligation, thus making foreclosure impossible. No mortgage can be foreclosed without the mortgagee producing the note and stating that it is in default and showing (proving) that this is so. **In securitization, this is NEVER possible.**

## Foreclosure Defense and Chain of Title

Here is where foreclosure defense can begin to chip away at a bank's claim on your property. In order for a mortgage, deed of trust or promissory note to be valid, it must have what is known as "perfection" of the chain of title. In other words, there must be a clear, unambiguous record of ownership from the time you signed your papers at closing, to the present moment. Any lapse in the chain of title causes a "defect" in the instrument, making it invalid.

In reality, lapses occur frequently. As mortgages and deeds began to routinely be bought and sold, the sheer magnitude of those transfers made it difficult, costly and time-consuming for institutions to record every transaction in a county records office. But in order to have some method of record-keeping, the banks created the **Mortgage Electronic Registration System** (MERS), a privately held company that tracks the servicing rights and ownership of the nation's mortgages. The MERS holds more than 66 million American mortgages in its database. When a foreclosure is imminent, MERS appoints a party to foreclose, based on its records of who owns the mortgage or deed of trust. But some courts have rejected the notion that MERS has the legal authority to assign title to a particular party in the first place. A court can decide MERS has no "standing," meaning that the court does not recognize its right to initiate foreclosure since MERS does not have any financial interest in either the property or the promissory note.

And since MERS has essentially bypassed the county record-keeping system, the perfection of chain of title cannot be independently verified. This is where a foreclosure defense can gain traction, by questioning the perfection of the chain of title and challenging MERS' legal authority to assign title. Some courts may also challenge MERS' ability to transfer the promissory note, since it likely has been sold to a different entity, or in most cases, securitized (pooled with other loans) and sold to an unknown number of entities. In the U.S. Supreme Court case Carpenter v. Longan, it was ruled that where a promissory note goes, a deed of trust must follow. In other words, the deed and the note cannot be separated.

If your note has been securitized, it now belongs to someone other than the holder of your mortgage. This is known as bifurcation — the deed of trust points to one party, while the promissory note points to another. Thus, a foreclosure defense claims that since the relationship between the deed and the note has become defective, it renders the deed of trust unenforceable.

Your promissory note must also have a clear chain of title, according to the nation's Uniform Commercial Code (UCC), the body of regulations that governs these types of financial instruments. But over and over again, borrowers have been able to demonstrate that subsequent assignments of promissory notes have gone unendorsed. In fact, it has been standard practice for banks to leave the assignment blank when loans are sold and/or securitized and, customarily, the courts have allowed blank assignment to be an acceptable form of proof of ownership. However, when the Massachusetts Supreme Court in U.S. Bank v. Ibenez ruled that blank assignment is not sufficient to claim perfection, it provided another way in which a foreclosure can be challenged.

This is my first diary entry and I'm not going to hide the fact that this information comes from personal experience and need. When I made mortgage payments to Chase Home Finance, LLC, it claimed ownership of my mortgage note, also known as a deed of trust note, or 'loan' note (hereafter "Note"). During the same time period that Chase claimed ownership of my Note, so did Fannie Mae. However, I soon discovered that neither Chase nor Fannie Mae owned my Note. It was, and still is, owned by a mortgage-backed security trust (MBST) which purchased my Note from neither Chase nor Fannie Mae but from yet another purported owner of my Note. In my extended diary I give the UCC statute common to all states and also recent case citations (one is less than two weeks old) that you, your attorney or your friend's attorney will need for a successful "show me the note" defense. Yes! It works!

You need to know this; that the term, "show me the note" is a misnomer. Under the Uniform Commercial Code (UCC), Section 309 of Article 3 (UCC 3:309) http://www.law.cornell.edu/ the Note owner does not need to show a Note, whether original or a copy, in order to enforce it "if" it once had possession of the Note and now claims to have lost it or that it was accidently destroyed. That, however, is not the problem that banks face. The problem banks are having with the "show me the note" defense is proving that they have a right to enforce the Note, even if they can produce a copy. The UCC, at 3:309(2), says that the bank must 'prove' its right to enforce the Note. You ask the bank, "Where did you get that Note? Show me the endorsements". The bank must show the 'chain of title' from the original Lender bank to itself, and that it cannot do. Almost always, the Lender sold your Note to Fannie Mae the day it was signed which then, within days, sold it to another entity and so on until it ended up in a "mortgage-backed security trust", or MBST. Fannie Mae no longer owns your Note, nor does MERS. The United States Bankruptcy Court for the Eastern District of California issued a ruling dated May 20, 2010, in the matter of In re: Walker, Case No. 10-21656-E-11, http://www.ultimatebk.com/ stating that "Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

Though this conclusion was based upon California law it is the same UCC and real estate law as most other states have adopted. The In re: Walker court states that the Note and the mortgage are inseparable and that an assignment of the Note carries the mortgage with it, "while an assignment of the latter [the mortgage] alone is a nullity" (most foreclosing companies claim ownership of the mortgage only, not the note making the mortgage a nullity). Meaning; if a bank claims to own the mortgage but doesn't also own your Note, it cannot foreclose. This concept is from ancient English Common Law codified by most states as the UCC, for Notes (a Note is personal property), and also from real estate law and practice for the mortgage (a mortgage is not personal property, it is real property). A more recent California case, Gomes v Countrywide Home Loans, et al., D057005, Ct. Appeals CA, 4th Dist., Div One, February 18, 2011, http://www.leagle.com/ did not address the "show me the note" defense though it was widely expected to do so. However, in Gomes the CA court cited two cases approvingly where the "show me the note" defense was accepted by federal courts; Castro v Executive Trustee Services, LLC, (D Ariz, 2009 February 23, 2009, CV-08-2156-PHX-LOA) 2009 US Dist Lexus 14134, http://www.leagle.com/and Weingartner v Chase Home Finance, LLC, (D Nev 2010) 702 F Supp2nd 1276, 1282-1283, http://mattweidnerlaw.com/.

The CA court noted that the issue in those two cases cited in the preceding paragraph (the "show me the note" issue) was not the same issue that it had to decide in Gomes. In the Gomes case the plaintiff, Jose Gomes, did not raise the "show me the note" defense. Instead, his case was a lawsuit for discovery in order to find out 'if' he could raise the "show me the note" defense. The Gomes court held that such a lawsuit, making 'no' specific allegations, did not state a cause of action as a matter of law. Gomes alleged only that 'upon information and belief' MERS did not own his Note or did not have authority from the Note owner to foreclose and Jose Gomes wanted to know if his "information and belief" was true, because he didn't really know if it was true. The Gomes court, finding that Gomes made no allegation upon which it could rule, agreed with the lower court that his case should be dismissed. The Gomes court never addressed the "show me the note"

defense in its published opinion. The most recent case that expounds upon the "show me the note" defense, as does Weingartner, continues with the reasoning made in previous court rulings made in Kansas, Ohio and Michigan and other states making ownership of your Note a requirement in order to commence a foreclosure, whether in a judicial or non-judicial state. See, Eastern District Bankruptcy Court for New York, In Re: Ferrell L. Agard, Case No. 810-77338, February 10, 2011 issued less than two weeks ago, http://www.ritholtz.com/. In this case Ferrell Agard, the home owner, lost for reasons having nothing to do with ownership of the mortgage Note, but the Hon. Robert E. Grossman, Bankruptcy Judge, stated, **"However, in all future cases which involve MERS, the moving party must show that it validly holds both the mortgage and the underlying note in order to prove standing before this Court"**. In other words, Mr. Banker, if you want to foreclose, or file a Proof of Claim and set aside the 'stay' order that stops you from foreclosing, you must "Prove" that you own "both" the **Mortgage Note and the Promissory Note (meaning: prove a valid "chain of title")**

**UCC Section 3-301**

UCC Section 3-301 provides only three ways in which an individual may qualify as the person eligible to enforce a note, two of which require the person to be in possession of the note (which may include possession by a third party that possesses it for the person) 19:

• The first way a person may qualify as the person eligible to enforce a note will be its "holder." This familiar concept, put down in more detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer. Determining to whom a note is payable requires examination not only of the face area of the note but additionally of any indorsements. This is because the party to whom a note is payable may be changed by indorsement 20 to ensure that, for instance, a note payable to the order of a named payee that's indorsed in blank by that payee becomes payable to bearer.21

• The 2nd way a person may be the person eligible to enforce a note will be a "Non-holder in possession of the [note] who has the rights of a holder." o Just how can an individual who is not the holder of a note have the rights of a holder?. This may occur by operation of law beyond your UCC, such as the law of subrogation or estate administration, by what type person may be the successor to or acquires another person's rights.22.

Additionally it may occur if the delivery of the note to that person is really a "transfer" (as that term is defined in UCC Section 3-203, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument."23 Thus, in case a holder (who, as seen above, is really a person eligible to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even though the transferee does not end up being the holder (as in the example below). Similarly, a 19 See UCC § 1-103(b) (unless displaced by particular provisions of the UCC, the law of, inter alia, principal and agent supplements the provisions of the UCC). See also UCC § 3- 420, Comment 1 ("Delivery to an agent [of a payee] is delivery to the payee."). Note that "delivery" of a negotiable instrument is defined in UCC § 1-201(b)(15) as voluntary transfer of possession. This Report does not address the determination of whether a particular person is an agent of another person under the law of agency and the agency law implications of such a determination.

20 "Indorsement," as defined in UCC § 3-204(a), requires the signature of the indorser. The law of agency determines whether a signature made by a person purporting to act as a representative binds the represented person. UCC § 3-402(a); see note 12, supra. An indorsement may appear either on the instrument or on a separate piece of paper (usually referred to as an allonge) affixed to the instrument. See UCC § 3-204(a) and Comment 1, par. 4.

21 UCC Section 3-205 contains the rules concerning the effect of various types of indorsement on the party to whom a note is payable. Either a "special indorsement" (see UCC § 3-205(a)) or a "blank indorsement" (see UCC § 3205(b)) can change the identity of the person to whom the note is payable. A special indorsement is an indorsement that identifies the person to whom it makes the note payable, while a blank indorsement is an indorsement that does not identify such a person and results in the instrument becoming payable to bearer. When an instrument is indorsed in blank (and, thus, is payable to bearer), it may be negotiated by transfer of possession alone until specially indorsed. UCC § 3- 205(b).

22 See Official Comment to UCC § 3-301. 23 UCC § 3-203(b). Subsequent transfer will result in the following transferee being truly a person eligible for enforce the note.

23 Under what circumstances does delivery of a note qualify as an exchange? As mentioned in UCC Section 3-203(a), a note is transferred "if it is delivered by a person apart from its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." For instance, assume

that the payee of a note sells it to an assignee, going to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee won't qualify as a holder (because the note continues to be payable to the payee) but, because the transaction between the payee and the assignee qualifies as an exchange, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person eligible for enforce it. Thus, the failure to acquire the endorsement of the payee doesn't prevent a person in possession of the note from being the person eligible for enforce it, but demonstrating that status is more difficult. The reason being the person in possession of the note must also demonstrate the purpose of the delivery of the note to it to be able to qualify as the person eligible for enforce.

24 Under what circumstances does delivery of a note qualify as a transfer? As stated in UCC Section 3-203(a), a note is transferred "if it is delivered with a person apart from its issuer for the goal of giving to the person receiving delivery the right to enforce the instrument." Like, think that the payee of a note sells it to an assignee, intending to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee will not qualify as a holder (because the note is still payable to the payee) but, as the transaction between the payee and the assignee qualifies as a transfer, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the individual eligible for enforce it. Thus, the failure to obtain the endorsement of the payee doesn't prevent a person in possession of the note from being the individual eligible for enforce it, but demonstrating that status is more difficult. The reason being the individual in possession of the note must demonstrate the goal of the delivery of the note to it in order to qualify as the individual eligible for enforce.24

24 If the note was transferred for value and the transferee does not qualify as a holder because of the lack of endorsement by the transferor, "the transferee has a specifically enforceable right to the unqualified endorsement of the transferor." See UCC § 3-203(c).

25 UCC § 3-309(a)(iii) (1990 text), 3-309(a)(3) (2002 text). The 2002 text goes on to provide that a transferee from the person who lost possession of a note may also qualify as a person entitled to enforce it. See UCC § 3309(a)(1)(B) (2002). This point was thought to be implicit in the 1990 text, but was rejected in some cases in which the issue was raised. The reasoning of those cases was rejected in Official Comment 5 to UCC § 9-109 and the point was made explicit in the 2002 text of Article 3. 26 To prevail the person must establish not only that the person is a person entitled to enforce the note but also the other elements of the maker's obligation to pay such a person. See generally UCC §§ 3-309(b), 3-412. Moreover, as is the case with respect to the enforcement of all rights under the UCC, the person enforcing the note must act in good faith in enforcing the note. UCC § 1-304. Subsequent transfer can lead to the next transferee being a person eligible for enforce the note.

**Illustrations:**

1. Maker issued a negotiable mortgage note payable to the order of Payee. Payee is in possession of the note, which has not been indorsed. Payee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

2. Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3- 301(i).

3. Maker issued a negotiable mortgage note payable to the order of Payee. Payee sold the note to Transferee and gave possession of it to Transferee for the objective of giving Transferee the proper to enforce the note. Payee did not, however, indorse the note. Transferee isn't the holder of the note because, while Transferee is in possession of the note, it's payable neither to bearer nor to Transferee. UCC § 1-201(b)(21)(A). Nonetheless, Transferee is really a person eligible to enforce the note. This is because the note was

transferred to Transferee and the transfer vested in Transferee Payee's to enforce the note. UCC § 3-203(a)-(b). As a result, Transferee is really a nonholder in possession of the note with the rights of a holder and, accordingly, a person eligible to enforce the note. UCC § 3- 301(ii).

4. Same facts as Illustrations 2 and 3, except that (i) underneath the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is written by Payee. In the important points of Illustration 2, Transferee is just a holder of the note and a person eligible to enforce it. In the context of Illustration 3, Transferee is just a person eligible to enforce the note. Whether Agent may enforce the note or mortgage on behalf of Transferee depends partly on what the law states of agency and, in the event of the mortgage, real property law.

5. Same facts as Illustration 2, except that after obtaining possession of the note, lost the note and its whereabouts cannot be determined. Transferee is just a person eligible to enforce the note even though Transferee does not need possession of it. UCC § 3-309(a). If Transferee brings an action on the note against Maker, Transferee must establish the terms of the note and the weather of Maker's obligation on it. The court might not enter judgment and only Transferee, however, unless the court finds that Maker is adequately protected against loss that may occur by reason of a state of another person (such while the finder of the note) to enforce the note. UCC § 3-309(b). 27 See id. UCC § 3- 309(b) goes on to state that "Adequate protection may be provided by any reasonable means."

**Standing and Capacity**

Standing and capacity to sue are related, but distinguishable, legal concepts (see *Silver v Pataki, 96 NY2d 532, 537 [2001]; Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 154-155 [1994]; Caprer v Nussbaum, 36 AD3d 176, 181-182 [2006]; Security Pac. Natl. Bank v Evans, 31 AD3d 278, 279 [2006]*). Although they are both components of a party's authority to sue (see Matter of *Graziano v County of Albany, 3 NY3d 475, 479 [2004]*), capacity requires an inquiry into the litigant's status, i.e., its "power to appear and bring its grievance before the court" (*Community Bd. 7 of Borough of Manhattan v Schaffer, supra at 155*), while standing requires an inquiry into whether the litigant has "an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request" (*Caprer v Nussbaum, supra at 182*). Where standing is put into issue by a defendant's answer, a plaintiff must prove its standing if it is to be entitled to relief (see *TPZ Corp. v Dabbs, 25 AD3d 787, 789 [2006]*; see also *Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]* [standing "is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation" (emphasis added)]).

This section is provided to provide background general information as it relates to securitization.

**Certificates relating to a securitization trust.**

As detailed herein, the certificates reflected beneficial ownership interests in the trust and the supplemental interest trust. The original certificate principal balance, pass-through rates, and other features were listed in the table on pages s-1 and s-2 for the offered certificates. The certificates were issued under a pooling and servicing arrangement between a mortgage loan trust for example, as a depositor, lender, and a Bank, an Association, as servicers, and a Bank, N.A., as trustee and custodian, dated as of the closing date. All mortgage loan collections were used to pay servicer and trustee costs, premiums for lender-paid mortgage insurance, certain swap counterparty payments, and interest and principal payments on the certificates. Based on their outstanding certificate principal balances and associated entitlements, all principal collections were paid to one or more classes of certificates offered by this prospectus supplement or to other classes of certificates not offered by this prospectus supplement. Any excess collections over the amounts paid to the holders of the offered certificates (either as interest or principal), the servicers, the trustee, mortgage insurance providers, and the swap counterparty were paid to the owners of the other classes of certificates (including the class X certificates) that were not offered by this prospectus supplement and were entitled to such excess amounts. This prospectus supplement includes a "description of the Certificates-Distributions."

According to the Pooling and Servicing Agreement, the following documents were normally required to be given to the Trust for each Mortgage Loan:

(1) the associated original Mortgage Note endorsed in full or in part without recourse to the Trust,
(2) the original mortgage, as well as documentation of recording (or, if the original recorded Mortgage has not yet been returned by the recording office, a copy thereof certified to be a true and complete copy if such Mortgage was sent to for recording),
(3) an original assignment of the Mortgage to the Trust in recordable form or in blank (save as indicated below) or
(4) the originals of any agreements involving assumption, modification, extension, or guarantee.

Many of the Mortgage Loans are likely to have had mortgages or assignments of mortgages recorded in the name of an agent on behalf of the holder of the linked Mortgage Note. No Mortgage assignment in favor of the Trust had to be drafted, delivered, or recorded in those situations. Instead, each Servicer was expected to take all necessary steps to ensure that the Trust was visible to the owner of the linked Mortgage Loan on the agent's records for the purposes of the agent's system for recording transfers of beneficial ownership of mortgages. The Depositor did not plan to cause the assignments to be recorded, with the exception of assignments relating to mortgaged properties in certain states.

According to the terms of the Mortgage Loan Purchase Agreements, each Seller made or assigned to the Depositor certain representations and warranties concerning the related Mortgage Loan as of the date of (or provided in) the applicable Mortgage Loan Purchase Agreement, which generally included representations and warranties similar to those summarized in the prospectus under the heading "Description of the Agreements-Representations and warranties; Repurchase." The Depositor's rights under the Mortgage Loan Purchase Agreements were assigned to the Trust on the Closing Date for the benefit of the offered certificates' holders. Following the discovery of a breach of any representations or warranties that materially or adversely affected the interests of holders of Offered Certificates in a Mortgage Loan, or receipts of notice of such breach, the applicable seller was obligated to cure such breach or Purchase that affected Mortgage Loan from the Trust for a price equal to the unpaid principal balance thereof plus any co-payments (or, in certain circumstances, to substitute another Mortgage Loan).

Holders of the Offered Certificates suffered a loss to the extent that any Mortgage Loan for which a representation or warranty was violated was not purchased or, if authorized, substituted by the appropriate seller and a Realized Loss occurred with respect to such Mortgage Loan.

**Amendment**

The Depositor, Servicers, and Trustee amended the Pooling and Servicing Agreement without the consent of certificate holders for the purposes described in the prospectus under "Description of the Agreement - Material Terms of the Pooling and Servicing Agreements and Servicing Agreements – Amendments." The Depositor, the Servicers, and the Trustee, as well as the holders of a 66 percent percentage interest in each class of certificates affected, amended the Pooling and Servicing Agreement to add to, change, or eliminate any of the provisions of the Pooling and Servicing Agreement, or modifying the certificate holders' rights in any way; provided, however, that no such amendment allowed:

1. Without the swap counterparty's approval changed the provisions of the Pooling and Servicing Agreement governing payments to the supplemental interest Trust, or otherwise had a major detrimental effect on the swap counterparty's interests (such consent was not to be unreasonably withheld)
2. Any payment needed to be distributed on any certificate has been reduced in any way, or the schedule of such payments has been delayed, without the approval of the holder of such certificate;
3. If aggregate outstanding principal amounts of certificates of each class, the holders of which were needed to consent to any such alteration, without the approval of the holders of all certificates of such class, the aforesaid percentage would be reduced.

**Section 2**

**Conveyance of Mortgage Loan**

The Depositor does barely sell, transfer, assign, set over, and convey to the Trust without recourse all of the Depositor's right, title, and interest in and to all of the assets that comprise the Trust Fund on or before the Cut-off Date, including all interest and principal received on or without respect to the Mortgage Loan on or before the Cut-off Date ( other than Scheduled Payments due on the Mortgage Loans on or before the Cutodd Date), ), all accounts, chattel paper, deposit accounts, documents, general intangibles, products, instruments, investment property, letter-of-credit rights, and all earnings of the foregoing. In connection with the Depositor's conveyance of the Trust's assets, the Depositor further agrees to indicate in its books and records that the Mortgage Loans were sold to the Trustee pursuant to this Agreement on or before the Closing Date, at its own expense, and to deliver to the Trust the Mortgage Loan Schedule. The Mortgage Loan Schedule is attached to this Agreement as Exhibit B and is hereby incorporated into and formed a part of it.

The Depositor, the Servicers, the Trust, and the Trustee all agreed and understood that no Mortgage Loan should be included in the Trust, including but not limited to:

- a "High-Cost Home Loan," as defined by the New Jersey Home Ownership Act, which went into effect on November 27, 2003.
- a "High-Cost Home Loan," as defined by the New Mexico Home Loan Protection Act, which went into effect on January 1, 2004,
- a "High-Cost Home Loan," as defined by the Massachusetts Predatory Home Loan Practices Act, which went into effect on November 7, 2004, or (iv) a "High-Cost Home Loan," as defined by the Indiana High-Cost Home Loan Law, which went into effect on January 1, 2005.

1. With regard to any Mortgage Loan thus assigned that was not a Co-op Loan, the Depositor did hereby provide to, and deposit with, the custodian the following documents or instruments:

   A. The original Mortgage Note, along with all riders, was endorsed in blank or "Pay to the order of Securitization trust, without recourse." All intervening endorsements were included in the Mortgage Note, demonstrating a complete chain of title from the originator to (_________);
   B. Except as provided below and for each Mortgage Loan that was a MERS Loan, the original recorded Mortgage with all riders, with evidence of recording thereon, or, if the original Mortgage had not been returned from the recording office, a copy of the original Mortgage certified by the Transferor to the true copy of the original of the Mortgage that has been delivered for recording in the appropriate recording office of the jurisdiction in which the Mortgaged was located, noting the presence of the Loan's MIN and either language indicating that the Mortgage Loan was a MOM Loan origination, or if the Mortgage Loan was not a MOM Loan origination, the original Mortgage and its assignment to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage was recorded;
   C. The original Assignment of each Mortgage Loan that was not a MERS Loan endorsed either in blank or to "Securitization trust" in the case of each Mortgage Loan that was not a MERS Loan
   D. The original title insurance policy (or, if the original title insurance policy has not been received from the title insurance firm, a preliminary title report, commitment, or binder);
   E. Originals of any intervening mortgage assignments, along with evidence of recording, or, if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified to be a true copy of the original of the assignment sent for recording in the appropriate jurisdiction where the Mortgaged property was; and
   F. If any, the originals of all assumptions and modifications agree.

2. With regard to any Mortgage Loan thus assigned that was a Co-op Loan, the Depositor did hereby provide to, and deposit with, the Custodian the following documents or instruments:
   A.
   (i) (I) Either the original Mortgage Note (or a lost note affidavit with a copy of the original Mortgage Note) or
   (ii) the original consolidation, extension, and modification agreement (or a lost note affidavit including a copy of the original consolidation, extension, and modification agreement), in either case, endorsed "pay to the order of Securitization trust without recourse" or "pay to the order of Securitization trust without recourse."
   B. The Mortgagor's original Mortgage with respect to such Co-op Loan;
   C. The original Assignment of Mortgage, either blank or endorsed to "Securitization trust."
   D. Original mortgage assignments revealed a complete chain of assignment from the originator of the associated Co-op Loan to the final endorsee on the Mortgage Note;
   E. Original Form UCC-1 and any continuation statements with evidence of filling thereon (or a documented copy thereof) entered into by the Mortgagor with respect to such Co-op Loan
   F. A completed chain of assignments from the originator of the associated Co-op Loan to the applicable Seller, with evidence of recording on Form UUC-3 (or copies thereof) by the applicable Seller or its agent assigning the security interest covered by such Form UUC-3 (or copies thereof);
   G. Original stock certificates representing the stock allocated to the related dwelling unit in the related residential cooperative housing corporation, pledged by the related Mortgagor to the originator of such Co-op Loan with a stock power in blank attached, and pledged by the related Mortgagor to the originator of such Co-op Loan;
   H. The first exclusive lease;
   I. The original or a copy of the proprietary lease assignment to the Trust, as well as all subsequent assignments;

J. An original or a copy of the recognition agreement for the mortgage interests in the Co-op Loan by the residential cooperative housing corporation, whose stock was pledged by the connected Mortgagor or the originator of such Co-op Loan; and

K. Originals of any assumption, consolidation, or modification agreements relating to any of the items listed in (A) through (F) above for such Co-op Loan.

If the Depositor did not deliver the Mortgage, Assignments of Mortgage, or assumption, consolidation, or modification, as the case may be, concurrently with the execution and delivery of this Agreement solely due to a delay caused by the public recording office where such Mortgage, Assignments of Mortgage, or assumption, consolidation, or modification, as the case may be, with evidence of recording thereon, if applicable, solely due to a delay caused by the public recording office where such Mortgage, Assignments of Mortgage, or assumption, consolidation, the Depositor shall deliver or cause to be delivered to the Custodian written notification that such Mortgage, assumptions, consolidation, or modification, as the case may be, has been delivered to the proper public recording office for recording.

Following that, the Depositor delivered or caused to be delivered to the Custodian such Mortgage, Assignments of Mortgage, or assumption, consolidation, or modification, as the case may be, together with evidence if a recording was indicated on the document, if applicable, upon receipt thereof from the public recording office. Any required endorsement that was not included on a Mortgage Note or an Assignment of Mortgage was created or caused to be made by the Depositor.

No Depositor, Servicer, or Trustee was compelled to permit the Assignment of Mortgage referred to in this section 2.01 to be recorded with respect to any Mortgage Loan that was not a Co-op Loan. None of the Depositors, Servicers, or Trustees were compelled to cause the Form UCC-3 referred to in this Section 2.01 to be filed concerning any Co-op Loan. If any Assignment of Mortgage referred to in this section 2.01 is not recorded or is recorded incorrectly, neither the Servicers, the Trust, nor the Custodian are liable for any failure to receive or act on such notice.

On behalf of the Certificate holders, the Trust was given ownership of each Mortgage Note, the Mortgage, and the contents of the accompanying Mortgage File. Neither the Depositor nor the Servicers took any actions that were inconsistent with such ownership, and they should not have claimed a stake in it. In response to any third-party inquiries about ownership of the Mortgage Loans, the Depositor and Servicers stated that such ownership was held by the Trust on behalf of the Certificate holders. Mortgage documents relating to the Mortgage Loan were not delivered to the Custodian and were instead held in trust by the applicable Servicer for the benefit of the Trust as the owner thereof, and the Servicer's possession of the contents of each Mortgage File so retained was solely for the purpose of servicing the related Mortgage Loan, and such retention and possession by the Servicer was solely in a custodial capacity. The Depositor committed to taking no action that would contradict the Trust's ownership of the Mortgage Loans, to notify any interested parties that the Mortgage Loans had been sold, and to claim no ownership interest in the Mortgage Loans. The conveyance of the Depositor's right, title, and interest in and to the Trust Find pursuant to this Agreement was intended to be a purchase and sale, not a loan, as stated in this Agreement. If the transfer of the Mortgage Loans from the Depositor to the Trust was not characterized as a sale under applicable law, this Agreement constituted a security agreement, and the Depositor was deemed to have granted to the Trust and did grant to the Trust, a security interest in the Mortgage Loans, a first priority security interest in all of the Depositor's right, title, and interest in, to, and under the Mortgage Loans, all payments of principal on or interest on such Mortgage Loans, all other rights relating to payments made in respect of the Trust Fund, and all proceeds thereof, whether now owned or hereafter acquired.

If the Trust created by this Agreement terminates before the settlement of any person's rights in any Certificates, the security interest created hereby continued in full force and effect, and the Trustee (or the Custodian on its behalf) was deemed to be a collateral agent for such person's benefit. The Depositor did cede, assign, and set over to the Trust for the benefit of the Certificate holders its rights and interests under

each sale Agreement, in addition to the conveyance made in the first paragraph of this Section 2.01, including the Depositor's right, title, and interest in the representations and warranties contained in such Sale Agreement, as well as the benefit of the repurchase obligations and the obligation of the sellers contained in the Sale Agreement to take all actions reasonably necessary to ensure the enforceability of the Mortgage Loan at the request of the Depositor or the Trust. The Trustee hereby accepted such assignment and was entitled to exercise the Depositor's rights under each Sale Agreement as if it were the Depositor for such purposes. Except as expressly set forth herein, the foregoing Sale Agreement, transfer, assignment, set-over, deposit, and conveyance did not and was not intended to result in the Trust creating or assuming any obligation of the Depositor, the Sellers, or any other person in connection with the Mortgage Loans or any other agreement or instrument rating thereto.

## SECTION 10.03.
## Governing Law.

THIS AGREEMENT WAS CONSTRUCTED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF PENNSYLVANIA APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF PENNSYLVANIA AND THE OBLIGATION, RIGHTS, AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATE HOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

The original Mortgage recording was frequently the only recorded document in the Chain of Title for traditional lending before Securitization. Because banks maintained the loans and did not sell them, only the original recording remains in the banks' possession. The introduction of securitization, particularly through "Private Investors" rather than Fannie Mae or Freddie Mac, ushered in a whole new mortgage lending procedure. The Notes and Mortgages were securitized and sold once, twice, three times, or more. Using the conventional paradigm, each transfer of the Note or Mortgage of Trust would necessitate the recording of new Assignments of the Mortgage and Note. Each recording, of course, necessitated time and money. (NOT to be confused with the sale of Servicing Rights, which is just the right to collect payments on Notes and keep a tiny fraction of the payment for Servicing Fees. When a homeowner says their loan was sold, they're usually talking about Servicing Rights.)

WACHOVIA BANK, NATIONAL ASSOCIATION originated mortgage loans as a "correspondent lender." These loans were then sold and transferred to the SECURITIZATION TRUST, a "federallyapproved securitization" trust.
The Note and Mortgage had taken two distinctly different paths since Dec. 27, 2006. The Note was securitized into the SECURITIZATION TRUST. The Mortgage of the subject property still remained the same with the original lender.

The formal agreement that established the SECURITIZATION TRUST was known as a "Pooling and Servicing Agreement (PSA)" and was available on the Securities Exchange Commission's website. A "Prospectus Supplement," also available on the SEC website, explained the Trust. By its provisions, the Trust established a "CLOSING DATE" of December 27, 2006. In this situation, the promissory note was converted to trust property in accordance with the PSA's requirements. The Securities and Exchange Commission receives the Trust agreement under oath. The acquisition of the subject Trust's assets and the PSA is governed by the law. Given the circumstances, if the Assignment of Mortgage completed after the Trust's Closing Date, would make it void since it breached the Trust instrument's specific requirements. As required by the Pooling and Servicing Agreement, there was no record of Assignments to either the Sponsor or the Depositor.

## Securitization Summary

- There can be no legal enforcement of the Note if the Mortgage and the Note are not issued by the same organization. The Mortgage protects the lender by enforcing the Note and allowing them to foreclose on the property. As a result, if the Mortgage and the Note are separated, foreclosure is not possible. If each has a distinct mortgage/beneficiary, the Note cannot be enforced by the Mortgage, and there can be no lawful foreclosure on the homeowners' property if the Mortgage is not itself a legally enforceable instrument.
- If the loan was sold, pooled, and transformed into a security, the purported holder would no longer be able to argue that it is a true party of interest because the original lender has been paid in full.
- In addition, once the Note is changed into stock, or a stock equivalent, the Note is no longer a Note. Double dipping occurs when both the Note and the stock or stock equivalent exist at the same time. Security fraud is known as double-dipping.
- Once a loan is securitized, which the aforementioned loan may have been several times, the loan loses its security component (i.e., the Mortgage) and the right to foreclose through the Mortgage is eternally lost.
- According to the findings of this report, the Promissory Note has been permanently converted into stock. As a stock, it is subject to the SEC's laws and regulations, necessitating the completion of registration statements, Pooling and Servicing Agreements, Form 424B-5, and other documents. There is no evidence on record that the Mortgage was ever transferred simultaneously with the supposed legal transfer of the Note, such that the Mortgage and Note were permanently separated, rendering the putative security in a property null and void, as asserted.
- A thorough study and analysis found that this was a securitized debt. The Assignment of Mortgage pretended to be an A to D transaction, but the foreclosing party was concealing the true sales facts of A to B, B to C, and C to D, where A is the original lender, B is the sponsor/seller, C is the bankruptcy-remote depositor, and D is the issuing mortgage-backed securities trust. According to our findings, they also withheld the legal SEC filings that governed the transaction. True original loan Notes and Mortgages required to be given by the Document Custodian confirmed to have been in their possession on the proper dates, to be governed by those SEC filings. As a result, the Trust's claim of ownership cannot be proven, and the loan servicing rights are not established at law by agreement. The examiner provides this as written testimony, and we are available for oral testimony.